United States District Court
Southern District of Texas

**ENTERED**

February 17, 2016

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| NANCY L. SCOGIN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:14-CV-478 |
| | § | |
| TEXAS EAGLE FORD SHALE | § | |
| MAGAZINE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

BE IT REMEMBERED that on February 16, 2016 the Court **DENIED** Plaintiff's Motion to Reconsider Ruling on Plaintiff's Motion for Summary Judgment. *See* Dkt. No. 26.

## I.    Background

On December 4, 2014, Plaintiff Nancy Scogin ("Scogin") filed a complaint against Sandra Castillo Swallow ("S. Swallow"), Troy W. Swallow ("T. Swallow"), and Texas Eagle Ford Shale Magazine ("the Magazine") alleging violations of overtime and minimum wage payments under the Fair Labor Standards Act ("FLSA") and breach-of-contract claims on three promissory notes. Orig. Compl. Dkt. No. 1. On December 23, 2015, the Court denied in part and granted in part Scogin's motion for summary judgment. Dkt. No. 21. The Court held that there was a genuine issue of material fact as to whether the Magazine's annual gross volume of sales exceeded $500,000, a threshold requirement for FLSA coverage. Dkt. No. 21 at 6–11. The Court granted summary judgment on the three promissory notes, and determined that only S. Swallow was liable based on the record before the Court. Dkt. No. 21 at 13. The Court did not enter summary judgment that any other Defendant is liable to Scogin under those notes. Dkt. No. 21 at 14.

The Court held a final pretrial conference on January 22, 2016.  At that conference, Defendants agreed to stipulate that the Magazine's annual gross volume of sales exceeded $500,000.  Scogin filed this motion for reconsideration requesting that the Court grant her summary judgment because the genuine issue of material fact has been resolved in Scogin's favor.  Dkt. No. 26.  Defendants responded to Scogin's motion, Dkt. No. 30, and Scogin filed a reply, Dkt. No. 31.

## II.    Legal Standards

### A.    Motion for Reconsideration

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration.  *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004).  A motion for reconsideration is generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) if the motion is filed within twenty-eight days of the complained of order.  *See Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n. 10 (5th Cir. 1998).  Because the Court did not dispose of all of the claims against all of the parties, the Court will analyze the parties' motion to reconsider under Federal Rule of Civil Procedure 54(b).  *See, e.g.*, *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727–28 (5th Cir. 2012) (citing *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010)).  "District courts have considerable discretion in deciding whether to grant a motion to reconsider an interlocutory order.  The exact standard applicable to the granting of a motion under Rule 54(b) is not clear, though it is typically held to be less exacting than would be a motion under Rule 59(e), which is in turn less exacting than the standards enunciated in Rule 60(b)."  *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475 (M.D. La. 2002).  Under this standard, "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."  *Estate of Henson v. Wichita Cty.*, 988 F. Supp. 2d 726, 730 (N.D. Tex. 2013) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).  Rule 54(b),

however, "does not mean that the Court has carte blanche to reconsider newly presented theories of liability or the lack thereof." *Livingston*, 288 F. Supp. 2d at 480; *see also id.* at 481 ("Any position is supportable by boundless arguments, and lawyers are trained and paid to find those arguments. Judicial economy counsels against reconsidering an issue each time someone presents a new argument.").

     B.     Motion for Summary Judgment

"Summary judgment is appropriate where the competent summary judgment evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Bolton v. City of Dall.*, 472 F.3d 261, 263 (5th Cir. 2006)); *accord*. Fed. R. Civ. P. 56(c). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must view all evidence in the light most favorable to the non-moving party. *Brumfield*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)); *Piazza's Seafood World*, 448 F.3d at 752; *Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 891 (E.D. Tex. 2004). Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc, per curiam).

The party moving for summary judgment bears the "burden of showing this Court that summary judgment is appropriate." *Brumfield*, 551 F.3d at 326 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the party seeking summary judgment has discharged its initial burden, the non-movant must come forward with specific evidence to show that there is a genuine issue of fact. *Lockett*, 337 F. Supp. 2d at 891; *see also Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993). The non-movant may not merely rely on conclusory allegations or the pleadings. *Lockett*, 337 F. Supp. 2d at 891. Rather, it must cite specific facts identifying a

genuine issue to be tried in order to avoid summary judgment. *See* Fed. R. Civ. P. 56(e); *Piazza's Seafood World*, 448 F.3d at 752; *Lockett*, 337 F. Supp. 2d at 891. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).  Thus, once it is shown that a genuine issue of material fact does not exist, "[s]ummary judgment is appropriate . . . if the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.' " *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222–23 (5th Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III.   Discussion

### A.   Corporate Entity Status

At the final pretrial conference, the Court questioned Defendants about the Magazine's corporate status because neither party identified its status in any submission.   Defendants' counsel requested time to investigate this issue further and to confer with Defendants.   In her motion for reconsideration, Scogin argues that the Magazine cannot defend itself because it forfeited its corporate status after failing to pay franchise taxes. Dkt. No. 26 at 2–3.   In their response, Defendants inform the Court that they contacted the Texas Comptroller's office and learned that the Magazine forfeited its corporate privileges on September 25, 2015. Dkt. No. 30 at 3.   The lawsuit was initiated on December 4, 2014.   Dkt. No. 1. Defendants argue that the Magazine retains its ability to defend itself in this lawsuit because it forfeited its corporate privileges after the lawsuit was filed.  Dkt. No. 30 at 3.  Defendants further inform the Court that it has made an open records request to the Texas State Comptroller's office to obtain documentary evidence for the Court. Dkt. No. 30 at 2.

Under Texas Tax Code § 171.251,[1] the Secretary of State may forfeit the corporate privileges of a corporation that fails to pay franchise taxes under Texas Tax Code § 171.309.[2]   Once the corporate privileges are forfeited, then "the corporation shall be denied the right to sue or defend in a court of this state."  Tex. Tax Code Ann. § 171.252 (West 2015).   However, "[section] 171.252 bars corporations from filing suit only *after* they have forfeited their right to do business."  *Tex. Clinical Labs, Inc. v. Leavitt*, 535 F.3d 397, 403 (5th Cir. 2008). Consequently, both Texas state and federal courts have construed this section to permit entities whose rights were forfeited after the lawsuit was filed to continue to defend or prosecute the action.  *See Tex. Clinical Labs, Inc.* 535 F.3d at 403–05 (concluding that a Texas corporation that had forfeited its corporate status after initiating a lawsuit had capacity to proceed with the action); *Waterway Ranch, L.L.C. v. City of Annetta*, 411 S.W.3d 667, 673–74 (Tex. App.—Fort Worth, 2013, no pet. filed) (allowing a corporation's appeal to move forward despite its forfeiture because it forfeited its corporate status after the lawsuit was commenced).

The Court concludes that Magazine may continue to defend itself in this suit because it forfeited its status after this suit commenced.  Accordingly, Plaintiff's motion for reconsideration of summary judgment as to the Magazine based on its claim that it forfeited its corporate privileges is **DENIED**.

---

[1] Section 171.251 of the Texas Tax Code Annotated provides:
   The comptroller shall forfeit the corporate privileges of a corporation on which the franchise tax is imposed if the corporation:
      (1) does not file, in accordance with this chapter and within 45 days after the date notice of forfeiture is mailed, a report required by this chapter;
      (2) does not pay, within 45 days after the date notice of forfeiture is mailed, a tax imposed by this chapter or does not pay, within those 45 days, a penalty imposed by this chapter relating to that tax; or
      (3) does not permit the comptroller to examine under Section 171.211 of this code the corporation's records.
[2] Section 171.309 of the Texas Tax Code Annotated states:
   The secretary of state may forfeit the charter, certificate, or registration of a taxable entity if:
      (1) the secretary receives the comptroller's certification under Section 171.302; and
      (2) the taxable entity does not revive its forfeited privileges within 120 days after the date that the privileges were forfeited.

B.    Plaintiff's FLSA Claims

1.    Enterprise Coverage under the FLSA

The minimum wage and maximum hour protections under the FLSA apply to an employee "who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce."   29 U.S.C. §§ 206(a), 207(a)(1).[3]   The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that:

(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . .

29 U.S.C. § 203(s)(1)(A).  A plaintiff who seeks to invoke FLSA protection under an enterprise coverage theory must prove the enterprise's gross sales under § 203(s)(1)(A) as an element of her claim.  *Holland v. DA Tencil, Inc.*, No. 3:14–CV–86, 2014 WL 3588520, at *2 (S.D. Tex. July 21, 2014) (Costa, J.).

In its December 23, 2015 order, the Court determined that there was a genuine issue of material fact concerning whether the Magazine's annual gross volume of sales exceeded $500,000.  Dkt. No. 21 at 10–11.  The only evidence submitted in support of this threshold question was Scogin's declaration, and the Court determined that Scogin's statement concerning the Magazine's annual gross volume of sales was not based on her personal knowledge.  Dkt. No. 21 at 8–10. Despite Defendants' argument on Scogin's second summary judgment motion that the annual gross volume of sales was in dispute, Defendants agreed to stipulate that the annual gross volume of sales exceeded $500,000 at the final pretrial

---

[3] As determined by the Court in its December 23, 2015 order, Scogin does not discuss individual coverage or argue that she engaged in commerce or the production of goods for commerce.  Dkt. No. 21 at 6–7; *see also* Orig. Compl., Dkt. No. 1, ¶ 5 (pleading only the elements of enterprise coverage). The Court therefore need not analyze individual coverage.

conference held on January 21, 2016.  In compliance with the Court's order, Dkt. No. 29, the parties submitted their First Amended Joint Pretrial Order on February 1, 2016.  Dkt. No. 32.  In the Admissions of Fact section of their First Amended Joint Pretrial Order, the parties agree that "[t]he annual revenue from the defendants' magazine exceeds $500,000."  Dkt. No. 32 at 5.  The parties also acknowledge that Defendants own, operate, and publish a magazine that is available to subscribers.  Dkt. No. 32 at 4.  Therefore, Defendants qualify as an enterprise engaged in commerce or in the production of goods for commerce, as defined under the FLSA.  *See* § 203(s)(1)(A).  Scogin has met her burden to show enterprise coverage under the FLSA; thus, the Magazine must comply with the minimum wage and maximum hour requirements.

In her motion for reconsideration of her summary judgment motion, Scogin argues that the Court should grant summary judgment on her FLSA claims because there no longer exists a genuine issue of material fact as to the Magazine's annual gross volume of sales.  The Court, however, did not address other aspects Scogin's FLSA claims in its December 23, 2015 order because it found a genuine issue of material fact as to a threshold requirement.  Having determined that Scogin has met her burden to show enterprise coverage under the FLSA, the Court must analyze Scogin's motion for summary judgment as to her minimum wage and overtime claims.

2.    Regular Wages Claim

Before examining Scogin's motion for reconsideration for summary judgment as to her claim for regular wages, the Court finds it necessary to identify those issues that are not contested.  The parties' summary judgment evidence is notably sparse.  Scogin's summary judgment evidence includes the following:  (1) Declaration of Nancy L. Scogin including attachments of three promissory notes, Dkt. No. 18, Ex. 1, and (2) Declaration of Jon D. Brooks regarding attorney's fees, Dkt. No. 18, Ex. 2.  Defendants' summary judgment evidence includes only the Declaration of Troy W. Swallow.  Dkt. No. 19, Ex. 1.   The Court considers these

declarations, even though they are not notarized. *See* Dkt. No. 21 at 2, n.1
(explaining that unsworn declarations that comply with 28 U.S.C. § 1746 may be
used to support a factual assertion under Federal Rule of Civil Procedure
56(c)(1)(A)). Given the limited evidence submitted by the parties, the Court will
also consider the parties' First Amended Joint Pretrial Order to identify undisputed
facts. *See McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996) ("It is
a well-settled rule that a joint pretrial order signed by both parties supersedes all
pleadings and governs the issues and evidence to be presented at trial.") (quoting
*Branch-Hines v. Hebert*, 939 F.2d 1311, 1319 (5th Cir. 1991)).

Although Defendants refuse to identify Scogin as the Magazine's employee,
Defendants' filings clarify that they do not dispute that Scogin was an employee,
but rather they argue that Scogin falls under the FLSA's administrative exemption.
Defendants' imprecise language confuses these two possible defenses. Defendants
made prior representations that Scogin agreed to work for the Magazine as part of a
business opportunity, which suggested that Scogin's role was the same as that of S.
Swallow and T. Swallow. For example, in T. Swallow's declaration, he states,
"[Scogin] volunteered her time and money as an opportunity to 'buy into' the
business knowingly and willingly." Dkt. No. 19-1 at 1. However, nothing in
Defendants' filings suggests that Defendants deny an employer-employee
relationship between Scogin and Defendants. *See Orozco v. Plackis*, 757 F.3d 445,
448 (5th Cir. 2014) (defining employer under 29 U.S.C. § 203(d) and explaining the
economic reality test utilized to determine the existence of an employer-employee
relationship). Defendants instead argue that Scogin is exempt from minimum wage
and maximum hour requirements under the FLSA's administrative exemption. *See*
Dkt. No. 19 at 3 ("Plaintiff was not an employee, but rather an administrative
executive, thus exempt from the requirements of 29 U.S.C. §§ 206 & 207."); Dkt. No.
30 at 4 (contesting that Scogin was not an employee, but an administrative
executive). Defendants cite to 29 C.F.R. § 541.200(a) in support of their argument
that Scogin was an "employee employed in a bona fide administrative capacity."
Dkt. No. 30 at 7. The FLSA's administrative exemption applies to "any employee

employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Thus, Defendants' argument that Scogin falls under the administrative exemption first requires that Scogin be an employee. Because Defendants do not dispute the existence of an employer-employee relationship, the Court finds that Scogin was an employee of the Magazine.

Having established that Scogin was an employee, the Court finds that there is also no dispute that Scogin was a writer and editor for Defendants and "performed labor" for Defendants from September 2012 until May 2014. Dkt. No. 32 at 4. The parties further agree that Defendants paid no wages to Scogin between September 2012 and approximately March 2014. Dkt. No. 32, ¶ 7. In their response to the motion for reconsideration, Defendants argue that Scogin does not have personal knowledge that other employees were being paid while she did not receive wages. Dkt. No. 30 at 3–4. However, in the First Amended Joint Pretrial Order, the parties admit the following, "During the period in question, the defendants had several other employees who wrote articles and edited the magazine and to whom they paid wages." Dkt. No. 32 at 5, ¶ 12. The parties fail to define "the period in question," but the Court nonetheless notes that there is no dispute that other employees at the Magazine received wages.

Regarding Scogin's claim for regular wages, Scogin argues that Defendants failed to meet their burden to present evidence to controvert Scogin's summary judgment evidence. Dkt. No. 26 at 4–6. Specifically, Scogin states that she was promised base wages of $1,211.54 per week, which amounts to approximately $63,000 per year. Dkt. No. 18-1, ¶¶ 3, 8. Scogin states that S. Swallow "induced" her to defer payment of wages until the Magazine began earning revenue, to which Scogin agreed.[4] Dkt. No. 18-1, ¶ 4. Scogin continues,

By mid-2013, I began to reasonably believe that payment of my wages should be forthcoming based, in part, on the amount of business that

---

[4] Consistent with this statement, T. Swallow states in his declaration, "[Scogin] willfully forwent any income and reimbursement of these expenses for the betterment of the business." Dkt. No. 19-1 at 1. Thus, all parties agree that Scogin delayed receipt of wages during the early period of the Magazine's development.

seemed to be generated and the hiring of other employees, who were being paid wages by the defendants.  However, my wages were not paid.  Nor was any portion of the loan I made to the defendants repaid. By late-2013, I also reasonably believed that payment of my wages should be forthcoming based, in part, on the amount of business that seemed to be generated and the hiring of other employees, who were being paid wages by the defendants.  However, the wages were not paid.

Dkt. No. 18-1, ¶ 6.  Scogin acknowledges, and the parties agree, that she began to receive wages in March 2014.  Dkt. No. 32 at 5, ¶ 8.  In her declaration, Scogin details these payments:

The first pay period for which I received payment of current wages was March 1, 2014 to March 15, 2014.  The gross pay was $2,423.  I received payment in this amount every two weeks for March 2014, and the gross amount of $2,625 in April and most of May 2014.  The gross amount of wages received between March and May 2014 was $10,096.16.  However, I resigned in May 2014 because of the non-payment of the back wages, remaining issues with current pay and overtime pay, and non-payment of the loan.

Dkt. No. 18-1, ¶ 7.  In her second motion for summary judgment, Scogin stated that "the regular wages she is owed is $1,211 per week for a period of 18 months, which totals $94,500."  Dkt. No. 18 at 6.  Scogin's declaration is the only evidence she submits to support her regular wages claim.

Defendants do not contest that Scogin is owed wages in some form.  Indeed, implicit in their defense that Scogin is an employee employed in an administrative capacity is an admission that she is owed wages.  The definition for an "employee employed in a bona fide administrative capacity" includes any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.   T. Swallow's declaration supports Defendants' theory that Scogin was an employee employed in an administrative capacity:

> [Scogin] was part of the Senior Management team; at no point did we consider her an employee.   [Scogin] worked independently without supervision.   [Scogin] was not required or directed in any way by Sandra Castillo-Swallow or Troy W. Swallow on her work schedule and received only minimal direction in the manner in which she contributed to the magazine.

Dkt. No. 19-1 at 1.  Defendants further argue that the promissory notes, combined with wages to which Scogin argues she is entitled, would constitute a "windfall" for Scogin.  Dkt. No. 30 at 7.  Although the Court in its December 23, 2015 notified Defendants of their failure to cite to any case law in support of this claim, Dkt. No. 21 at 13, Defendants included the same paragraph in its motion for reconsideration, again without any supporting case law.  Dkt. No. 30 at 7.  Nonetheless, Defendants cite to the promissory notes included as Exhibits 1-B and 1-C in Scogin's summary judgment evidence.  Dkt. No. 30 at 5.  Defendants argue that the wages Scogin received in 2014, along with the promissory notes, amount to approximately $512.58 per week.  Dkt. No. 19 at 6.  Defendants exclude an unspecified period in 2012 during which the Magazine failed to gross $500,000.  Dkt. No. 19 at 6–7.

Turning to the record, the Court finds that there is a genuine issue of material fact concerning the amount of regular wages owed to Scogin.  Scogin's declaration that she was promised a specific salary is controverted by Defendants' argument and supporting evidence that the parties agreed to pay back wages in the form of the promissory notes.  The first promissory note, in the amount of $8,766.35, details the specific debts the Scogin incurred on behalf of S. Swallow to start up the

Magazine.   Dkt. No. 18-1, Ex. 1-A.   Defendants do not argue that this note represents payment for past wages.   The second promissory note states that S. Swallow promises to pay Scogin $3,494.74 "for net wages due."   Dkt. No. 18-1, Ex. 1-B.   It includes a table containing columns for a payment due date, "Gross wages," "Federal W.," "Social S.," "Medicare," and "Net Wages."   Dkt. No. 18-1, Ex. 1-B. The third promissory note states that S. Swallow promises to pay Scogin $25,454.28 "for value received."   Dkt. No. 18-1, Ex. 1-C.   Like the second promissory note, it includes a table with columns for the payment due date, as well as gross wages, net wages, and specific deductions.   Dkt. No. 18-1, Ex. 1-C.   Thus, there is a genuine dispute of material fact concerning whether these promissory notes constituted the back wages owed to Scogin.

The Court concludes that there is a genuine issue of material fact as to the parties' original agreement regarding payment of wages and whether the parties agreed that the promissory notes constituted full or partial payment for Scogin's back wages.   The Court therefore **DENIES** Scogin's motion for summary judgment.

### 3.      Overtime Payments

Under the FLSA, an employer must pay covered employees overtime compensation that is "not less than one and one-half times [the employee's] regular rate" for hours worked over forty in a workweek.   29 U.S.C. § 207(a)(1).   The employer has the obligation to maintain records of the employee's work hours.   *See* 29 U.S.C. § 211(c) ("Every employer subject to any provision of this chapter . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time.").   "An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation."   *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (alteration in original) (quoting *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995)).

An employee who brings an action under the FLSA first has the burden to show that she performed the work for which she claims she was not compensated. *Harvill*, 433 F.3d at 441.   To meet this burden, the employee must "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."   *Id.* (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) (superseded in part by statute on other grounds by the Portal-to-Portal Act, amending the FLSA in 1947, 29 U.S.C. § 251, et seq.).   Once the employee meets this initial burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."   *Harvill*, 433 F.3d at 441 (quoting *Anderson*, 328 U.S. at 687–88).   "Plaintiffs are only entitled to overtime compensation for tasks of which the employer had actual or constructive knowledge that the employee was working." *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 544 (S.D. Tex. 2011) (Harmon, J.).   "[I]f the 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207.' " *Newton*, 47 F.3d at 748 (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)).   Nonetheless, "[t]he remedial nature of [the FLSA] and the great public policy which it embodies militate against making [the plaintiff's burden] an impossible hurdle for the employee." *Anderson*, 328 U.S. at 687.

In Scogin's motion for reconsideration, Scogin argues that Defendants failed to controvert the evidence that she presented in her second motion for summary judgment regarding her claim for overtime.  Dkt. No. 26 at 5–6.  Scogin states in her declaration, "Soon after my employment began, I began working 6 days per week.  I worked, on average, 12 hours per day.  Therefore, I worked, on average, 72 hours per week for the defendants.  However, the time that I worked each day is not recorded by the defendants in any, [sic] proper time-keeping records."  Dkt. No. 18-1, ¶ 5.  Scogin argues that the burden is on the employer to maintain timekeeping records, so the Court should award her summary judgment for the overtime hours

that Scogin claims she worked.  Dkt. No. 26 at 9–11.  The Court finds that Scogin's statement that she worked seventy-two hours per week, without any other supporting evidence, is not sufficient to show that she indeed worked those hours. Although Defendants, as the employers, have an obligation to maintain records, Scogin nonetheless must meet her initial burden "to show the amount and extent of that work as a matter of just and reasonable inference."  *See Harvill*, 433 F.3d at 441.  Her statements made in her declaration as to the overtime hours she worked, without more, are insufficient to meet this burden.

In addition, Defendants present an affirmative defense as to Scogin's overtime claims and cite to evidence that creates a genuine issue of material fact. As discussed in the prior section, Defendants claim that Scogin is exempt from the FLSA because she falls under the administrative exemption.  *See* Dkt. No. 30 at 4; 29 U.S.C. § 213(a)(1) (providing that "any employee employed in a bona fide executive administrative, or professional capacity" is exempt from minimum wage and overtime provisions of the FLSA).  Defendants have the burden to prove that Scogin is exempt.  *See Idaho Sheet Metal Works, Inc. v. Steepleton Gen. Tire Co.*, 383 U.S. 190, 206 (1966) (holding the burden of proof is on the employer to prove an exemption under the FLSA).  Whether Scogin is exempt as an administrative employee is a mixed question of law and fact.  *See Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002) (reviewing the district court's finding that an employee is exempt under a mixed standard of review).  There are insufficient facts in the record to determine whether Defendants have met their burden to show that Scogin is exempt.  However, Defendants need not prove Scogin is exempt at this stage; rather, they need only create a genuine issue of material fact.

T. Swallow's declaration creates a genuine dispute of material fact regarding the number of hours Scogin worked.  T. Swallow explains that Defendants did "not know how much [Scogin] worked on Texas Eagle Ford Magazine.  [Scogin] simultaneously worked on projects for her daughter . . . as well as assisting her son-in-law."  Dkt. No. 19-1 at 1.  He further states that Scogin kept unusual work hours and did not work in the Magazine's office, so Defendants did not know how many

hours she worked.   Dkt. No. 19-1 at 1.   In the motion for reconsideration, Defendants argue that T. Swallow's declaration controverts Scogin's representations regarding the number of hours worked.   Dkt. No. 30 at 4.   This submission is sufficient to call into question the number of hours that Scogin worked.   Therefore, the Court finds that there is a genuine issue of material fact regarding the number of hours the Scogin worked.

The Court therefore **DENIES** summary judgment as to Scogin's overtime claims.

### 4.    Liquidated Damages

Scogin argues that she should be awarded liquidated damages under 29 U.S.C. § 260 because Defendants fail to present evidence that they acted in good faith.   Dkt. No. 26, ¶ 30.   However, any argument that Defendants acted in good faith when violating the FLSA would be an admission that they violated the FLSA. Having determined that summary judgment should be denied as to Scogin's claims for back wages and overtime, the Court finds any determination regarding the willfulness of the alleged FLSA violation is premature.   The Court therefore will not examine whether Defendants acted in good faith.

## IV.    Conclusion

The Court **DENIES** Plaintiff's Motion to Reconsider Ruling on Plaintiff's Motion for Summary Judgment.


SIGNED this 16th day of February, 2016.

Hilda Tagle
Senior United States District Judge